Mr. Speaker of the Court, good morning, Your Honors. Michael Singer for the plaintiffs in this case. We're here where one court grants certification and another court denies certification to two sets of very similar employees. In both cases where the employer treated the employees as a group and classifying them as exempt and then claims that in order to determine whether it can meet its burden to prove that they were properly classified as exempt, that individual inquiries will be necessary to look at each employee's duties to determine whether the classification was proper. The real question in these cases, in this classification cases, is can the issues be tried on the basis of common proof? In our case, in the Countrywide case, with home loan consultants, I may call them HLCs, there are three factors to the outside sales exemption that Countrywide claims. There are three different subclasses, in fact, in some ways. Would you agree that a court can't just say, okay, you called them exempt and therefore we're going to certify the class. You called them exempt and you're putting everyone in there. And so can the court just consider that and that's enough? Well, I think the court would be guided and aided by having some form of trial methodology in front of it, proof that the issues in the case can be decided on a common proof basis, and some evidence of common policies. So where there is a situation. Well, my question is if the only thing the court considered is you're exempt, you called them that, and therefore you're saying they're all the same. Does the inquiry have to go beyond that? Do the cases require more than that? I think the cases all ask for a little bit more than that. I don't think that it's the case that every single time that there is an exemption made as a group, that those cases are all certified as class. I think there has to be showing they have the Rule 23 elements, that all the other elements of adequacy and typicality and numerosity are met, and also that there is a methodology for proving the misclassification on a common basis. If you put yourself in our position, could you concede that you could have two fairly similar classes looking, and if the court applied, you know, went through everything on each of the cases, but because not all judges see things exactly the same, and the standard of review is abuse of discretion, that we might have to affirm two classes that look fairly similar and that neither court abused its discretion? I am going to concede that. I mean, that's not a desirable result under the law. I would be the first to say that. But abuse of discretion sometimes, we might not do it the same, but sometimes different judges, if they evaluate the proper factors and one thinks that, you know, analyzes, you know, predominance a little bit differently than the other one, and there's a basis for it, it's hard to disagree. Well, I think that if the court looks at the standard of review and looks at what the district court did and determines that the district court did not employ improper factors and the district court did not omit significant factors, which I will point out to the court, all the improper factors and omitted factors that went on here, that the Ninth Circuit can affirm in that case. The Ninth Circuit affirmed the Sepulveda v. Walmart case, and that's a manager's misclassification case. I assume they were all classified as exempt as a group in that case, and yet we have other cases where manager's misclassifications were not reversed on appeal or were affirmed and so forth. There's a recent case called Marlowe v. UPS, came out of the district court last year in Central District. It was discussed in the Wells Fargo briefing that I think is critical to look at on the issue of how these cases are tried. And the answer to whether these cases can be tried on common proof comes by looking at the cases that have gone to trial, the U.S. Bank case that we put in front of the court, and the cases that have gone to post-certification. De-certification or summary judgment is in the Whiteway v. FedEx case and the Pepplefinger EDS case. The Marlowe case is a de-certification case, and it discusses how the issues that bogged down the district court in our case can be tried on common proof. And the great starting point for me from Marlowe is that it says the burden at the class certification stage is slight. The court need only be able to make a reasonable judgment that the Rule 23 requirements are satisfied, and it sets out that pathway for proving the misclassifications on common proof. But what we need to talk about are the improper factors relied upon by the district court in the Vannoli v. Countrywide case. I think the most striking thing in our case is that the court disregarded its own scheduling order. And instead of permitting the plaintiffs to bring their class certification motion six weeks after the hearing on this odd motion to de-certify, it completely made no sense. The case had been post-discovery for only four and a half months when the defendant brought a motion to deny certification, which, by the way, we don't see sanctioned in any Ninth Circuit case, a motion to deny four and a half months before there is a motion brought on a full record by the plaintiffs, the proponent of class certification. And what was that motion based on? The defense motion was based on claiming that it had no idea how its employees spent their time in an outside sales case. Excuse me, Mr. Singer. I see you have about eight minutes. We're going to need to take a break right now, and then we'll be back in just a few minutes. Sorry to interrupt your argument. Somebody's just come up that we need to attend to. So we'll stand in recess for just a few minutes. All rise. This court is now in recess. Thank you. Thank you. Thank you. Thank you. All rise. This court resumes its session. Thanks. Sorry about that. You were saying? I was saying the first improper factor is the procedural posture relied on by the district court in denying certification before the proponents of class certification. The plaintiffs have the opportunity to bring their motion. You said there's no Ninth Circuit case that sanctions it, but there's no Ninth Circuit case that says you can't do it either. That's right. And I'm not sure that that's such a great basis for bringing a motion except for sanctioning the motion, except perhaps in the most egregious of circumstances, such as the B.C. Beach case that came up in state court. I think where your problem comes in on that, first off, there's nothing in the plain language, there's nothing that said who's got to bring it, how you've got to resolve that. So the issue, whether you deny or grant certification, the issue is going to be the same. But here the court says, were you going to present us any more evidence? It's three weeks before discovery closes. And you said, no, we're not going to do anything more. That's not true. What the court said was, are you going to conduct any more discovery from the other side in the nature of documents and depositions? And I said on the record, and it's in the record, that what the plaintiffs were going to do in this case is produce additional evidence, a full evidentiary record including an expert declaration and a trial methodology and a statistical methodology for trying this case. So it just doesn't make any sense that four months into a case, four and a half months after discovery. Did you ask for a continuance when the court said we're going to hear the motion to deny? Did you ask for a continuance? I said to the judge, please belay the ruling on this until six weeks. Well, belay the ruling until after we file our motion six weeks from now. And frankly, left the courtroom thinking that the judge couldn't find any prejudice, asked the defense counsel, is there any prejudice to allowing the plaintiffs to bring their motion six weeks from now? And I think that we need to get to the merits of what the judge did wrong also because the judge jumped the gun and went ahead on the evidentiary record in front of it instead of giving us the opportunity to meet our burden. And by the way, the case cited by the district court for the proposition that it was proper to rule on this motion to deny came up and said that the plaintiffs had failed in that case to meet a prima facie standard that they could meet the Rule 23 elements. So what we did in our case was we put forth what I've called a preview of evidence that would meet the Rule 23 standards, namely declarations from nine employees stating that they worked almost predominantly inside an office. And in the case of builders, home loan consultants at an off-site, on-site, at a residential development, they were inside an office almost 100 percent of the time. And what they were required to do was loan processing. So we satisfied that prima facie standard that would be the standard that the district court relied on. Getting to the merits, if we're looking at the merits of the 23B3 decision where the courts are looking for some uniform policies, some common policies that apply to all of the putative class members and then a methodology of common proof and that those issues that can be tried on common proof outweigh, predominate over the individualized issues. So the district court erred in saying that there was nothing in the record to show any uniform common policies and because my memory is not as good as it should be, I made a little list of what's in the record. I think the most striking thing is the corporate representative for Countrywide stated in his declaration in support of the motion it is immaterial to Countrywide whether these employees perform their work outside or inside an office. It may be immaterial to Countrywide, but if they do it mostly in the office, that's one thing. If they do it mostly out of the office, that's another, isn't it? Well, if they do it mostly in the office, then they're misclassified. Then they have to keep trying. Isn't that an individualized assessment then required? There is a methodology that Marlow v. UPS sets forth, that U.S. Bank did on representative evidence. There is a way of determining the percentage of time employees spend inside an office, outside an office. It's not that difficult a determination, and it's done with a scientific survey. But the point is it's individual. It's not that it can't be computed. It's just Mr. Smith might do it one way, Mr. Jones another way. And didn't Judge Carlton talk about that in Campbell v. Price? That he talked about the uniform classification of class employees as exempt is akin to an element of standing where he stated, naturally, an employee must have been classified as exempt to bring a misclassification claim. But once that hurdle is cleared, the case will ultimately turn on whether the employee was wrongly classified as exempt. In every single misclassification case, there has to be an examination of the duties. In the Ramirez case from the California Supreme Court, under the California wage orders and the outside sales exemption, the question is how did the employee spend his or her time? In the Savon case, the California Supreme Court said, we still try these cases as class actions on the basis of survey evidence, representative testimony. That's what Marlow v. UPS said. On the manager's misclassification, that case was certified. Judge Pragerson said, you have not given me a scientific form of proof. Your survey expert is not credible. The survey that you conducted was not credible. So I'm not going to try this case on common proof. Well, okay. But then also, you know, take for example, a district court might have been able to use quote, unquote, innovative procedural tools to redefine the class or certify individual issues under Rule 23-C-4 to make the class litigation more manageable. Is there any authority, however, that you can cite that compels a district court to do so or holds that district courts' choice not to employ such methods constitutes an abuse of discretion? Well, I think it's just basic standard of review that if a judge fails to integrate significant factors that are necessary to try these cases in analyzing whether certification is appropriate, that's reversible. That's Dukes v. Walmart. And where the judge mentions nothing. Was it Dukes v. Walmart? I mean, I guess that's been kind of hanging around for a long time, I guess. Has the mandate issued on that? As far as I understand, it's a valid certification order. I know there's two Ninth Circuit opinions. But I'm just talking about the standard of review and citing to a case on that. And if the court disregards a significant factor, such as trying this on common proof with survey evidence, representative testimony, the judge made another mistake by saying if there's one person who's properly classified, believing the declarations of countrywide, then our class definition is wrong. Well, that's improper procedure. So you want to leave some time for rebuttal, don't you? Yes, I certainly do. I just want to make sure that I get that the last improper factor not considered was the failure to consider the subclassing. There's a group of these employees that just work off-site. They're inside an office all the time. So we could subclass those out and easily try that case on common proof. Thanks, Mr. Singer. Sorry again about the interruption. Good morning. Good morning, Your Honors. Briefly three separate points. Can we get your name for the record, please, sir? Thomas Coffman for Defending Countrywide Homeless. Mr. Coffman, isn't it a little bit unfair, especially in a case of this size, to decide a certification decision before discovery is completed? Your Honor, I would say that basically the rule contemplates that the judge, the trial judge, will make this determination. I'd like to on that point correct Mr. Singer on a point he made where he said the Ninth Circuit has never allowed this or never sanctioned a defense-initiated Rule 23C motion or granting it. There's a case that's cited in the various cases that plaintiffs cite against a defense, a motion to deny certification called CAM. It's a CAM case. It's 509F2205, a Ninth Circuit decision, which actually affirmed when the trial court did just this. The defense moved to deny certification on the basis that the record as established established that class action was not the superior method for trying the case. The plaintiff there, though, unlike here, the plaintiff actually asked for more time to take discovery, which these plaintiffs never did. And he did. Well, did he ask for a condition? He's, you know, I'm a little bit, you know, just so that we, your position on what the record says, that I raised that he didn't, he said he wasn't going to do any more discovery because the court asked him on that. It was three weeks before the close of discovery. Was there a request for a continuance because they weren't ready on the motion to deny? It's a slight nuance. There wasn't a request for a continuance. There was a request not to consider a defense motion until plaintiffs filed their own motion. If you look at the timetable, which is set forth at pages 13 to 16 of our brief, I think it's important to go through it really quickly. You know, on March 26th, the plaintiffs in the Rule 26 process stated that they needed until October 1st to complete discovery. On May 7th, we have a scheduling order, which sets a cutoff for motions. At no point did they request of the magistrate that they be the ones to file a motion. At no point did they request a specific timetable for a motion for certification. It's just a general motion cutoff. By July, they had the names and addresses of 3,000 people. We filed our motion on August 7th and left two months, two months of time for which they could do discovery. And on September 16th, they actually went to the magistrate and did request an extension of the expert cutoff, but at that point did not request a continuance of the trial date. I mean of the trial date, I'm sorry, of the class cert date. On October 17th, the district court issued its tentative. At any point along this way, the plaintiffs could have come forward and said, Your Honor, we are not ready to deal with certification. There's evidence that we are gathering that will make a difference. But they didn't do that. What they said was, Your Honor, you are not allowed to consider a defense motion to deny certification. I believe, you know, we've sort of beat the point to death almost, but they said to the court, we didn't want to be on defendant's schedule. And that is very different from the notion that they were being diligent and pushing as quickly as they could, but they just didn't have time to get things done. Why aren't they allowed to set the schedule? It's their case. I mean, they can put the, you know, pace it as they wish within the limits that the court gives them. So if they have up until the 90th day to do it, then they can do it on the 90th day. You would be absolutely right, Your Honor, if the court had said that this is the timetable by which I'm going to you know, I'm setting a scheduling order, here's the time for discovery, and then I'm going to consider class certification. It doesn't say that. Actually, what the rule says is that at an early practicable time, the district court can look at the record and see if it's got enough to make a decision. Here, the district court did just that. And I don't think that they've put in, you know, the kind of evidence that they would need to show that the court abused its discretion. Even now, to this day, all that is intoned is these generalized sort of buzzwords of trial plan, statistics. They didn't present any of this to the court. I mean, perhaps if they had, in all this time they had, said here, Your Honor, this is the trial plan we're going to put together, it might have been different. In Marlow, it's interesting that plaintiffs cited Marlow v. UPS. The court there decertified the case because it said you can't just fall back on the notion of statistics, representative evidence. You have to actually set forth how you're going to do it. And to this day, there's been nothing put forward by plaintiffs' counsel to address the fundamental individualized issue, which is that we put in evidence that there's no set rule or procedure of how you go about doing this job, which, by the way, distinguishes it from some of the cases that the court itself distinguished, such as Alba v. Papa John's, a case that Mr. Singer had a much better result in. In that case, Mr. Singer and his firm were able to show that there were these standardized policies and procedures, and there were ways that you could see, by looking at these procedures, that people all did the job in the same way for material purposes. There's nothing like that shown. All we have is the statement, which, Your Honor, I mentioned, that, well, they didn't go, they classified them all as exempt. They didn't go and do an individual analysis of each person, which I would represent is true in every case. There are no employers I've ever seen, and I handle a lot of these cases, where the employer has a group of people and that every six months it goes back and audits every single person to see if they're exempt. Well, it seems to me that, you know, I guess that, you know, sort of based on a bumper sticker, shoot all extremists, I'm going to say that you're both the extremists from the standpoint that you're both supporting to push the rule to the outside, that essentially that, you know, appellants would like a rule that certification is required or presumed when an employer applies a uniform exemption classification to a set of employees. And it seems then I'm going to say that I'll put you on the other side saying that appellees want a rule that permits the individualized analysis standard to preclude class certification. So, but, you know, put yourself in the court's position. Under a reasonable and fair, say, certification rule of these types of misclassification classes, what specific factors, aside from employers' uniform exemption, should a district court consider in determining whether to certify a class? I think it should consider the very factors that this court considered. This court looked and it compared two cases. Again, that's a beat-up on opposing counsel, but both handled by Mr. Singer, both involving pizza places. Well, I know this court at the end, though, I think also was presented with Wells Fargo, too. Wasn't Wells Fargo? The Wells Fargo case had been decided before Judge Sabra ruled, right? Right. With a different result, so. Well, the difference in Wells Fargo, I think, and you'll hear more about it from Wells Fargo's counsel, I don't represent Wells Fargo, was that there the court made an error, I think, by completely relying on the standard of, well, there's all this evidence of individualized differences, but there was a group classification. Judge Sabra did not, in our case, say that, didn't set forth any kind of blanket rule of that sort. What he said was, in certain companies, there's evidence of policies and procedures that show that the job is relatively uniform, such as, as I was mentioning, in the Alba v. Papa John's, there was that evidence. The court certified a case finding that their procedures and how they commanded different people in different pizza places to manage created uniformity. Whereas at Domino's, Judge Selma denied certification on the basis that, at that pizza place, the record that was before him showed wide variation. Here, the record showed incredible variation. Judge Sabra noted that there was no procedure in place that said how you're supposed to spend your time outside or inside. There was plenty of evidence in the record. Even the very declarations that the plaintiffs submitted showed that the people were free to spend the majority of their time outside. The people that were, and their declarations were cited in Judge Sabra's order, all they testified is, nobody ever told me I had to spend the majority of my time outside. So ultimately, what is this going to devolve into? It's going to devolve into an individualized inquiry. Did you spend your majority of your time outside or the majority of your time inside? You can't say that, well, they had a policy of not doing enough to make sure everybody was exempt. That is, I think, kind of so frustrating. That's no different than the standard that I think was mistakenly adopted by Judge Patel that if the employer classifies everybody as exempt in a certain job and doesn't go through periodically and do an audit and reclassify individually, you have to certify. But is your argument then boiled down to that regardless of what they might have been able to show, they didn't come up with the proof at the time they needed to come up with it? Is that what this comes down to? A, that's true for sure. And I don't think they've shown proper diligence or an excuse that would say the court didn't give them a chance. I think the record, again, if you look at page 13 to 16, shows they had a chance. But then the court had enough evidence in the record of the lack of a common policy, which plaintiffs still I don't think have ever shown, and it had enough evidence that there was going to be no way to go through and identify which people were exempt and which people aren't using collective evidence. And therefore, in its discretion, which is broad, it decided in this case class certification was inappropriate. I mean, hypothetically, if he had presented a survey that said, you know, 95 percent of these people were, the great bulk of the time, outside of the office, different case, that's not what happened here. But if that's what happened here, I think the court would have been within its discretion to certify the class. I don't know what other evidence would be before it, but that would in fact be a strong factor for certification, I would think. At least it's showing that would be evidence you could say showed this great uniformity. I mean, there might be problems with the survey or whatever. But if assuming it was a valid survey and it showed 95 percent of the people spent all their time inside, I think the trial court would certainly be within its discretion. And instead they presented what? Nothing. They presented nine declarations, four of which were unsigned. And they basically took the position, you know, pride comes before the fall. They took the position that you court cannot decide this until we decide to file a motion. And we haven't decided yet. We'll get it to you in a few weeks. And by the way, they said four weeks, not six. And they had four weeks from that point, and they still haven't filed a motion. They could have after the hearing gone and filed their motion or at that point filed something with the court. They basically rested on the position that the trial court could not grant this motion. And that was an error on their part. Every court that has considered the issue, both in California and under the Federal Rules of Civil Procedure, has said that a trial court has discretion to grant a defense-initiated motion to deny certification. The DCVG case in state court, the CAN case I just mentioned to you. And it's important. The plaintiffs are trying to confuse two kinds of motions. There is a motion to deny certification under Rule 23, which is based on an evidentiary record. And then there's a Rule 12 motion to strike the class allegations. That is a much more disfavored motion. And there, to get those granted, you have to show essentially that there's no way they can ever gather evidence to establish a class. That was the motion in the In Re Walmart case, the Bass VAS case that the plaintiffs have relied on. That's a Rule 12 motion. And in both of those cases, at page 13 in the In Re Walmart case and at page 7 in the Bass case, they distinguished the motion from the one based on evidence. And the court said, I'm not prepared to grant a pleadings motion based on no evidence striking the class allegations. We have to wait until there's discovery. And then once the trial court has determined there's been enough discovery to make a determination, at an early practicable time, it rules. And if it turns out that the plaintiffs had made a showing that they had more discovery and the trial court unreasonably cut them off, that would be one thing. That's just not the record here. And I think it's very important. Again, page 13 to 16, it lays it all out. There was plenty of time here. Plaintiffs failed to use diligence, and they have no excuse for not having put forth more evidence, whatever it might be, assuming they haven't. Does anyone have any other questions? I'm happy to take questions. And I don't think so. Thank you, Mr. Cochran. Okay. I think saying plaintiffs failed to use diligence by relying on the district court's scheduling order is really overstating things. Well, what it comes down to, as he says, when Judge Sobraw was ready to rule, you didn't have the goods. Well, we did not present the goods. We would have presented our goods by the time permitted us under the scheduling order. And I mentioned this at the oral argument to Judge Sobraw and said that we were going to, as I already mentioned today, presenting trial methodology. What the court asked earlier about a survey. Why would you take that chance? Because it was put over a period of time. And if you put all your eggs in one basket, then this is what happens. This is not about diligence. We did not get the phone numbers to enable us to contact people to prepare for a cert motion until after they filed their motion to deny cert. And by the way, defense counsel is twisting these things around by saying that the issue has come up, the Ninth Circuit has sanctioned it before. In every case where it's come up, it's come up on a record of both motions, of plaintiffs being able to bring their motion at the same time after the defense has filed that motion to deny it. But any time a judge wants to say there's no common policies, they can look through the record, as in the Domino's case where if one reads the early part of the opinion, we can see the common policies in that case. But Judge Selina didn't understand how to try the issue of duties as a matter of common proof. But we know how to do that now based on the other cases that have shown us. And, yes, Countrywide thinks it's immaterial, whether the employees spend their time inside or outside, but they have a burden, and that is a common policy that was reached everybody in this case, just as having a uniform job description, just as having a policy of treating those at an on-site residential construction was the same as treating those who didn't do that type of work. And Mr. McInerney will discuss how those elements in Wells Fargo led the court to grant certification just as the court here should have granted certification based on the record. This is in answer to the court's question about one group says blank classification means you always certify. The other group says individualized issues means you never certify. And the question is, is the record sufficient to show there are common policies and a methodology, not a 95 percent merit survey. That's merits which we do after the certification. We'll go out and we'll do the survey. We just spent $400,000 on a survey. That's not the sort of thing that's done prior to certification. That's post-certification trial preparation. I see my light is on. Thank you. Thank you, Mr. Singer. Mr. Kaufman, thank you as well. The case that's argued is submitted. This is 0815355, Mavora v. Wells Fargo Home Mortgage. Each side will have 10 minutes. And I understand counsel for the plaintiffs have figured out how they're going to divvy up their time. So let me see.
judges: Silverman, Callahan, Mills